**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

**v.**

**NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Respondent.**

**No. 83–1533.**

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1984.

Decided June 25, 1984.

Joshua T. Gillelan, II, U.S. Dept. of Labor, Washington, D.C. (Francis X. Lilly, Deputy Sol. of Labor, Donald S. Shire, Associate Sol., Washington, D.C., on brief), for petitioner.

Stephen B. Clarkson, Washington, D.C. (Mitchell H. Segal, Pierson, Ball & Dowd, Washington, D.C., D.J. Huneycutt, Newport News, Va., on brief), for respondent.

Before SPROUSE and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

SPROUSE, Circuit Judge:

The Director of Workers' Compensation Programs (Director) appeals from a decision of the Benefits Review Board affirming the Administrative Law Judge's (ALJ)'s application of section 8(f) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901–50, to the total disability claim of Perry Barclift. The decision relieved Barclift's employer, Newport News Shipbuilding and Dry Dock Company (Newport News) of liability for most of Barclift's disability benefits.[1] Barclift, a welder in the Newport News shipyards, suffers from both a disabling back condition and job-related asbestosis. Neither the Director nor Newport News contests his total disability under the LHWCA. The dispute centers on whether his total disability results from the combined effects of two injuries or whether the job-related asbestosis alone would render him totally disabled. The resolution of this question does not affect Barclift's entitlement to benefits; it simply determines whether Newport News will be charged with the total costs of those benefits. The presiding

---

**1.** Section 8(f) allows the employer to shift financial responsibility for disability benefits to the Director's "second injury fund" when a pre-existing condition combines with a job-related partial disability to cause the claimant's total disability. 33 U.S.C. § 908(f). This provision was included in the LHWCA to encourage the hiring and retention of handicapped workers. *See C & P Telephone Co. v. Director, OWCP,* 564 F.2d 503, 512 (D.C.Cir.1977). An employer qualifying for section 8(f) treatment in individual cases must pay only the first 104 weeks of benefits. The "second injury fund" absorbs the costs of benefits beyond that time.

ALJ, in a decision affirmed by the Benefits Review Board, ruled that section 8(f) limited Newport News' liability to the first 104 weeks of benefits because it was the combined effect of both injuries that caused his total disability. The Director challenges this decision, arguing that section 8(f) could not apply because Barclift's asbestosis in and of itself was totally disabling, and that this condition was caused solely by his employment in the shipyard. We vacate and remand to the Benefits Review Board for further fact-finding on this issue.

## I

Barclift suffered a disabling back injury before Newport News hired him as a welder in its shipyards in 1966. His pre-existing back condition, the extent of which was known to Newport News when it made him a member of its work force, apparently was not severe enough to interfere with his work. Barclift performed his welding assignments competently for thirteen years, earning two promotions within that classification. His back condition grew progressively worse during that period, but it did not prevent him from completing his essential tasks. At the time he left his job in 1979, his back condition restricted him to light work.

Barclift's constant exposure to airborne asbestosis particles while employed by Newport News caused him increasingly severe pulmonary and respiratory problems. In January 1979, Barclift was hospitalized complaining of chest pains and breathing difficulties. A lung biopsy identified his condition as asbestosis. After a brief recuperative period, he returned to work at the shipyard under strict medical instructions to avoid exposure to dust or fumes. Newport News attempted to accommodate Barclift by reassigning him to the mail room as a delivery person, but his new duties still involved regular contact with noxious airborne particles. His coughing episodes worsened after only two months in his new job, and he was hospitalized a second time on May 15, 1979 for hemoptysis (expectoration of blood). Pulmonary function tests revealed that Barclift's vital lung capacity was only sixty-five percent of the volume predicted for someone of his age and size. The test was repeated a month later disclosing an additional fourteen percent drop in his breathing capacity. He was advised by his doctors to leave the shipyard and to perform only sedentary work in a dust-free environment.

Soon after his discharge from the hospital, Barclift applied for total disability payments under the LHWCA. Newport News conceded his eligibility, but claimed its liability was limited by section 8(f) of the LHWCA because Barclift's total disability resulted from a combination of his back condition and asbestosis. After a hearing, the ALJ resolved the section 8(f) issue in Newport News' favor:

> The medical reports in this record establish conclusively that the Claimant sustained back injury while working for Sears and Roebuck prior to being employed by Employer. The testimony of the Claimant, which is not disputed by the Employer, is that he informed the Employer of his pre-existing condition prior to the time he was hired 13 years ago. The record further reflects conclusively that the Claimant is suffering from asbestosis as a result of having been exposed to asbestos during the course of his employment. It follows, therefore that 8f is applicable in this case.

The Benefits Review Board affirmed the ALJ's decision over the dissent of one member. In its ruling, the Benefits Review Board acknowledged that the ALJ had failed to make specific findings on whether Barclift's asbestosis alone was totally disabling, but believed affirmance was possible since it was "apparent that the [ALJ] implicitly" held that asbestosis was only totally disabling in combination with his back condition.

## II

Section 8(f), the limited liability provision of the LHWCA, was designed to remove an employer's financial incentive to discriminate between able-bodied and partially disabled workers in its hiring practices.

*Maryland Shipbuilding and Drydock Co. v. Director, OWCP*, 618 F.2d 1082, 1084 (4th Cir.1980). It essentially guarantees that an employer will not be exposed to an increased risk of liability when it hires an otherwise qualified partially disabled worker. Section 8(f) provides this guarantee by transferring the financial burden from the employer to the "second injury fund" when a worker's pre-existing disability combines with a work place injury to produce a total disability. *Id.* The practical effect of this financial burden transfer is that an employer is relieved of long term liability for any work place injury that would not also be totally disabling to an able-bodied worker. *C & P Telephone Co. v. Director, OWCP*, 564 F.2d 503 (D.C.Cir.1977)

In the context of Barclift's claim for benefits, three requirements must be satisfied before the limited liability provisions of section 8(f) can be extended to Newport News: (1) Barclift's back condition must predate his employment with Newport News and qualify as a permanent partial disability; (2) his disability must have been known to Newport News before it hired him; and (3) his back condition must combine with his partially disabling asbestosis to produce a permanent total disability.[2] If his job-related asbestosis was in and of itself totally disabling, the limited liability scheme of section 8(f) would not apply because his pre-existing condition, which was the target of congressional concerns in enacting the provision, was not partially responsible for his total disability. *See Director, OWCP v. Newport News Shipbuilding and Drydock Co.*, 676 F.2d 110, 114 (4th Cir.1982); *Maryland Shipbuilding*, 618 F.2d at 1084. *See also Director, OWCP v. Universal Terminal & Stevedoring Corp.*,

575 F.2d 452, 454–55 (3d Cir.1978); *Equitable Equipment Co. v. Hardy*, 558 F.2d 1192, 1195 n. 6 (5th Cir.1977).

The evidence before the ALJ conclusively established (1) and (2). Barclift's back condition pre-dated his work with Newport News and was known to the employer before it hired him. The evidence on requirement (3), however, was conflicting at best. The pulmonary function tests indicated that Barclift's asbestosis was mildly restrictive, and thus not totally disabling by itself. Yet at least one of his treating physicians reported that his asbestosis restricted him to sedentary work in a dust-free environment, which, given the claimant's age and limited education, could qualify his asbestosis as totally disabling. The ALJ failed to resolve the conflict between this evidence even though section 8(f) could not apply if Barclift's asbestosis was totally disabling independent of his pre-existing back condition. The ALJ also failed to detail how the back injury and asbestosis combined to cause total disability.

 The evidence relating to the application of section 8(f) is to be construed liberally in favor of the employer. *Maryland Shipbuilding*, 618 F.2d at 1084. The relative weight to be given conflicting evidence, however, cannot be determined in the first instance at the appellate level. *See, e.g., Newport News Shipbuilding*, 676 F.2d at 115. Our role is limited to reviewing the record to insure that the ALJ's decision is supported by substantial evidence and conforms to the legal requirements Congress has imposed. We cannot undertake this responsibility in an intelligent fashion if the Board and the ALJ fail to state their findings and conclusions on

---

**2.** "The employer ... has the burden of persuading the fact finder that the disability was in part caused by the pre-existing condition." *Director, OWCP v. Newport Shipbuilding and Dry Dock Co.*, 676 F.2d 110, 115 (4th Cir.1982). *Accord Director, OWCP v. Cargill, Inc.*, 709 F.2d 616, 619 (9th Cir.1983) (limited *en banc* rehearing); *Director, OWCP v. Cambell Industries*, 678 F.2d 836, 841 (9th Cir.1982) *But see John T. Clark & Son v. Benefits Review Board*, 621 F.2d 93, 95–96 n. 5 (4th Cir.1980). A strong practical consideration supports this allocation of the burden of persuasion. Generally, the Director is not a

party to the original hearing before the ALJ, and "only the Director has any real interest in protecting the fund against unjustified payments. It is to the financial advantage of the employer for payments to be taken in part from the fund, and the employee involved is interested only in being paid, not in the source from which his payments come." 676 F.2d at 114. The only practical way to protect against unjustified payments is to place the burden on the employer to show that the total disability arose in part from the pre-existing condition.

all material issues of law and fact on the record. 33 U.S.C. § 919(d) (incorporating requirements of 5 U.S.C. § 557(c)). Nor is it a useful or prudent exercise to begin with the ALJ's ultimate conclusion and reason backwards that he impliedly resolved all the material issues necessary to reach that conclusion. Meaningful judicial oversight requires that the foundations of the administrative body's ultimate conclusion be subjected to intelligent scrutiny.

Accordingly, we vacate the decision below and remand for specific fact-finding on the question of whether Barclift's total disability arose solely from asbestosis or whether he was totally disabled only as the combined result of the back injury and asbestosis.

VACATED AND REMANDED.