**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TARTAN TERMINALS, INCORPORATED;
SIGNAL MUTUAL INDEMNITY
ASSOCIATION,
Petitioners,

v.

No. 98-1302

JEROME PULLER; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

TARTAN TERMINALS, INCORPORATED;
SIGNAL MUTUAL INDEMNITY
ASSOCIATION,
Petitioners,

v.

No. 98-1937

JEROME PULLER; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

On Petitions for Review of Orders
of the Benefits Review Board.
(96-362, 98-768)

Argued: March 5, 1999

Decided: April 22, 1999

Before WILLIAMS and MICHAEL, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Andrew Martin Battista, ANDREW M. BATTISTA,
P.A., Towson, Maryland, for Petitioners. Michael Carl Eisenstein,
Baltimore, Maryland; LuAnn Blanche Kressley, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Respondents.
**ON BRIEF:** Marvin Krislov, Deputy Solicitor for National Opera-
tions, Carol A. De Deo, Associate Solicitor for Employee Benefits,
Janet R. Dunlop, Counsel for Longshore, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Respondent
Director.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioners appeal from a final order of the Benefits Review Board
("BRB"), which granted summary judgment in favor of respondents.
The BRB affirmed the Administrative Law Judge's determination
that: (1) Jerome Puller was permanently totally disabled as a result of
a work-related accident; and (2) the employer, Tartan Terminals, Inc.,
was not entitled to relief under Section 8(f) of the Longshore and Har-
bor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 908(f).
For the reasons discussed below, we affirm.

I.

Jerome Puller ("claimant" or "Puller") filed a claim alleging total permanent disability from an injury sustained on the job on April 23, 1993. At the time of his injury, Puller was employed by petitioner Tartan Terminals, Inc. ("Tartan" or "employer"). Petitioner Signal Mutual Indemnity Association insures Tartan. An Administrative Law Judge ("ALJ") heard the claim and issued his decision granting benefits on August 22, 1995. He denied a motion for reconsideration on November 1, 1995.

Petitioners appealed to the Benefits Review Board ("BRB"), which remanded the case to the ALJ on the sole issue of whether the 1993 accident was the cause of claimant's cervical problems. The BRB upheld the ALJ's resolution of the two other main issues: (1) that the employer had failed to establish the availability of suitable alternative employment; and (2) that the employer was ineligible for Section 8(f) relief, which allows the payment of benefits out of a special, federally-established fund. See 33 U.S.C.§ 908(f). On remand, the ALJ found that the accident was the sole cause of claimant's total disability and granted benefits. Petitioners appealed for the second time to the BRB, which granted summary judgment on April 28, 1998, upholding the ALJ's decision on the issue of causation and recognizing its own previous decision as the law of the case on the other issues.

Petitioners originally appealed to this court from the BRB's first decision to affirm in part and remand to the ALJ on the issue of causation. Petitioners' first appeal was dismissed because the BRB had not yet made a final decision. A second appeal was brought after the ALJ's decision on remand from the BRB. Petitioners' third appeal from the BRB's April 28, 1998 final decision has been consolidated with their second appeal in this action.

II.

The BRB's decision to grant disability benefits is subject to a deferential standard of review. The court examines the BRB's review of the ALJ's determination for errors of law. If the BRB has affirmed the ALJ's decision after conducting appropriate review, this court must

3

likewise affirm the BRB's decision if the ALJ's findings are rational, supported by substantial evidence, and consistent with the law. See O'Keeffe v. Smith, Hinchman and Grylls Associates , 380 U.S. 359, 362 (1965). Substantial evidence has been described as "more than a scintilla but less than a preponderance." See v. Washington Metropolitan Area Transit Authority, 36 F.3d 375, 380 (4th Cir. 1994). In particular, the credit the ALJ gives to witness testimony and the inferences made by the ALJ from the evidence are entitled to deference, even when it is the appeals court's opinion that other conclusions would have been more reasonable. See id . Applying this standard, we find no basis for reversing the decision of the ALJ, which was properly upheld by the BRB.

Claimants for disability benefits under the LHWCA must successfully proceed through a step-by-step inquiry in which the burden shifts twice between the claimant and the employer. First, the claimant must establish total disability by demonstrating an inability to return to his former employ. See id. (citing Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988)). Then, the employer has the burden of rebutting claimant's showing of disability by demonstrating suitable alternative employment available to the claimant upon a reasonably diligent search. See id. (citing Lentz v. Cottman Co., 842 F.2d 129, 131 (4th Cir. 1988)). Finally, if the employer has met its burden, the claimant can counter the showing of suitable alternative employment "by demonstrating a diligent but unsuccessful search for such employment." See, 37 F.3d at 380 (citing Tann, 841 F.2d at 542).

In this case, only the second step, in which the employer has the burden of showing suitable alternative employment, is properly before the court on appeal.[1] Petitioners argue that they met this burden through the testimony of their vocational expert, which they claim was partially confirmed by the testimony of claimant's own witnesses that claimant could perform other, less demanding work. Respondent Puller asks the court to uphold the decision of the ALJ not to credit the testimony of Tartan's vocational expert because it

_____

[1] The BRB's April 28, 1998 Decision recites which issues the employer has raised for appeal: the adequacy of its showing of suitable alternative employment and its eligibility for Section 8(f) relief.

4

was not realistic and failed to account for all of claimant's disabilities. The parties also disagree as to whether the vocational expert's testimony was as specific as the law requires.

To rebut claimant's showing of disability under this second step of the inquiry, the employer must answer two questions: (1) whether there are jobs the claimant is capable of performing, taking into consideration his age, background, education, training, etc.; and (2) whether those jobs are reasonably available in the community in which the claimant is able to compete and could realistically be secured by the claimant. See Trans-State Dredging v. Benefits Review Bd., 731 F.2d 199, 201 (4th Cir. 1984); see also Newport News Shipbuilding and Dry Dock Co. v. Dir., Ofc. of Workers' Comp. Programs, 592 F.2d 762, 764 (4th Cir. 1979) (adopting the reasoning in Perini Corp. v. Heyde, 306 F.Supp. 1321, 1329 (D.R.I. 1969)).

The disagreement between the parties in this case as to the specificity required of employers in demonstrating alternative suitable employment reflects the variation among the courts of appeals on this issue. The Ninth Circuit, for example, has held that the employer cannot satisfy the second step of the inquiry merely by pointing to general work that a claimant may be able to perform;"rather `the employer must point to specific jobs that the claimant can perform.'" Hairston v. Todd Shipyards Corp., 849 F.2d 1194, 1196 (9th Cir. 1988) (quoting from Bumble Bee Seafoods v. Director, Ofc. of Workers' Comp. Progs., 629 F.2d 1327, 1330 (9th Cir. 1980)). The Ninth Circuit's specificity requirement, set forth in Bumble Bee also holds that the employer's demonstration of the availability of jobs should be realistic, taking into consideration the claimant's age, education and background and the likelihood that the claimant would actually be hired if he diligently sought the job. See id. (citing New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031, 1042-43 (5th Cir. 1981)).

The Fourth Circuit has followed the Fifth Circuit in adopting a modified version of the specificity requirement in Bumble Bee. See Turner, 661 F.2d at 1042 (Fifth Circuit modifying Bumble Bee), and Trans-State Dredging, 731 F.2d at 201 (Fourth Circuit adopting Turner for its modifications of Bumble Bee ). Under this modified specificity requirement, the employer need not prove that some spe-

5

cific employer would actually offer claimant a job. See Turner, 661 F.2d at 1042. However, the employer must take into account the specific capabilities of the claimant, namely,"his age, background, employment history and experience, and intellectual and physical capacities." Id. The employer cannot meet the specificity requirement by matching general statements of job skills retained by the claimant with general job descriptions fitting those skills. Nor does the Fourth Circuit's specificity requirement mean that the employer must show that there are specific prospective employers willing to hire the claimant. See Universal Maritime Corp. v. Moore, 126 F.3d 256, 264 (4th Cir. 1997) ("The employer need not contact prospective employers to inform them of the qualifications and limitations of the claimant and to determine if they would in fact consider hiring the candidate for their position."). The Fourth Circuit's common sense approach strikes a balance between these two extremes.

Applying the Trans-State Dredging reasoning here, there is no error of law requiring reversal. The BRB properly considered, under the appropriate standard, the ALJ's determination not to credit the vocational expert's testimony. The employer failed to meet its burden of showing, with the specificity required in the Fourth Circuit, that there was suitable alternative employment available to claimant. Although the petitioners are correct that they need not have named specific employers willing to hire claimant, respondent Puller is also correct that the employer must show specific jobs reasonably likely to be available to the claimant considering his specific capabilities.

Furthermore, the ALJ's decision not to credit the vocational expert's testimony is entitled to great deference. The ALJ rejected the vocational expert's testimony because it failed to be specific in considering claimant's capabilities, not because it failed to be specific in naming actual employers who would hire claimant. The vocational expert did not take into account all of claimant's capabilities, including his age, training, education, background, and various impairments. Rather, she isolated a few of his specific impairments, determined which job skills a person with only those impairments would possess, and found job descriptions matching those skills. Likewise, some of the testimony of claimant's own doctors was premised on only limited consideration of claimant's capabilities, rather than a more holistic view. The ALJ's finding that the vocational

6

expert's opinion was not realistic was entirely in keeping with the Fourth Circuit's enunciation of the burden on the employer in showing suitable available alternative employment. See Trans-State Dredging, 731 F.2d at 201. That burden cannot be met with opinion testimony that is not realistic, in light of all the limitations of the claimant. Thus, the ALJ and the BRB properly found that the employer failed to meet its burden in the second step of the disability inquiry.

III.

The second issue certified by the BRB as preserved for appeal is whether petitioners could avail themselves of the special fund, established by Section 8(f) of the LHWCA, 33 U.S.C. § 908(f), in meeting their obligation to pay benefits to claimant. The same deferential standard of review applies in reviewing this issue. See Newport News Shipbuilding & Dry Dock Co. v. Dir., Ofc. of Workers' Comp. Progs., 131 F.3d 1079, 1081 (4th Cir. 1997). Section 8(f) of the LHWCA, 33 U.S.C. § 908(f), allows the employer to reduce its liability for total disability if the work-related injury aggravated a claimant's pre-existing partial disability. See Dir., Ofc. of Workers' Comp. Progs. v. Newport News Shipbuilding & Dry Dock Co., 138 F.3d 134, 138 (4th Cir. 1998). Section 908(f) provides that in such cases, the employer provides compensation only for a limited period of 104 weeks, after which time the benefits are paid to the claimant or his survivor out of the special fund established by the LHWCA.[2]

To qualify for Section 8(f) relief when an employee is permanently

_____

[2] In its brief, respondent Department of Labor thoroughly reviews the history and intent of Section 908(f). In sum, the provision was enacted to prevent discrimination by employers on the basis of partial disability. By relieving employers from liability for disabilities caused in part by partial disabilities which existed before the employee was hired, the federal government hoped to encourage hiring of persons with disabilities. But demands on the special fund established by the government for this purpose have exceeded expectations and, of late, courts have recognized the suggestion of the Director of the Office of Workers' Compensation Programs to apply section 908(f) less liberally to alleviate the growing demand on the special fund.

totally disabled, an employer must establish three elements: (1) that the employee had an existing permanent partial disability before the work-related accident; (2) that the pre-existing disability was manifest to the employer prior to the work-related injury ("manifest" requirement); (3) that the ultimate disability is not attributable solely to the work-related injury ("combination" requirement). See Newport News Shipbuilding & Dry Dock Co., 131 F.3d at 1081. [3]

The petitioners claim that Puller suffered from a pre-existing disability, asbestosis, which was manifest to them before the April 23, 1993 accident, and that his disability was aggravated due to the pre-existing asbestosis. Puller argues that although the asbestosis was a medical impairment, it did not constitute a permanent partial disability. In addition, Puller asserts that even if the asbestosis was manifest to the employer, the combination element was found lacking by the ALJ, who determined that permanent total disability was caused solely by the April 23, 1993 accident. The other respondent in this case, the Director of the Office of Workers' Compensation Programs, United States Department of Labor, argues further that the employer failed to prove that, but for the asbestosis, Puller would have retained his wage-earning ability.

After reviewing the record, the ALJ's original opinion and opinion on remand, and the BRB's decisions, we find that the BRB correctly held that respondents do not qualify for Section 8(f) relief. In his original opinion, the ALJ found that the employer had failed to prove that any pre-existing disability, which was manifest to the employer, had combined with the effects of the April 23, 1993 accident to cause total permanent disability. Although the ALJ's order denying the motion for reconsideration suggested that the only element lacking in qualifying for Section 8(f) relief was the "manifest" requirement, the BRB

_____

[3] The "combination" requirement should not be confused with the "contribution" requirement imposed when determining an employer's liability in the case of a permanent partial disability. See Newport News Shipbuilding & Dry Dock Co., 131 F.3d at 1081. The contribution requirement--that the ultimate permanent partial disability be materially and substantially greater than a disability would be from the work-related injury alone--does not apply in this case, which is one of permanent total disability.

8

and the ALJ on remand both concluded that the April 23, 1993 accident was the sole cause of claimant's total disability. Thus, even if the "manifest" element was established because claimant's asbestosis was a pre-existing partial disability, the combination element was lacking because there was no showing that claimant's asbestosis combined with the April 23, 1993 accident to cause permanent total disability. Nothing in the record suggests that, but for the asbestosis, the accident would not have caused permanent total disability. Despite any discrepancies between the ALJ's original opinion, his order denying reconsideration, and the decision of the BRB, at least one of the elements of eligibility for Section 8(f) relief was found lacking throughout the proceedings. This finding is not unsupported by the evidence in the record. Therefore, the court must defer to the ALJ and BRB in concluding that payment out of the special fund, established by Section 8(f) of the LHWCA, was inappropriate in this case.

IV.

In summary, we find no basis for overturning the BRB's decision, which upheld the ALJ's findings as to disability and eligibility of the employer for Section 8(f) relief.

AFFIRMED

9