PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
<u>Petitioner,</u>

v.

FREDERICK M. STALLINGS; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
<u>Respondents.</u>

No. 00-1154

On Petition for Review of an Order
of the Benefits Review Board.
(99-330)

Argued: December 5, 2000

Decided: May 23, 2001

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Michael wrote the opinion, in which Judge Williams and Judge
Motz joined.

_____

COUNSEL

**ARGUED:** Jonathan Henry Walker, MASON, COWARDIN &
MASON, Newport News, Virginia, for Petitioner. John Harlow Klein,
MONTAGNA, KLEIN & CAMDEN, Norfolk, Virginia, for Respon-

dent Stallings; Laura Jessica Stomski, UNITED STATES DEPART-
MENT OF LABOR, Washington, D.C., for Respondent Director. **ON
BRIEF:** Amanda R. Kronin, MONTAGNA, KLEIN & CAMDEN,
Norfolk, Virginia, for Respondent Stallings. Henry L. Solano, Solici-
tor of Labor, Carol A. De Deo, Associate Solicitor, Mark Reinhalter,
Senior Attorney, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Respondent Director.

_____

## OPINION

MICHAEL, Circuit Judge:

Frederick M. Stallings contracted metal fume fever while welding
for his employer, Newport News Shipbuilding & Dry Dock Company
(Newport News). Stallings filed a claim for partial disability benefits
under the Longshore and Harbor Workers' Compensation Act
(LHWCA), and the administrative law judge (ALJ) awarded Stallings
$3.78 per week on a continuing basis for loss of wage-earning capac-
ity and $236.38 in a lump sum for accumulated loss of wages. On
reconsideration the ALJ denied Newport News's request for relief
under § 8(f) of the LHWCA: the ALJ characterized Stallings's award
as "nominal" and held that § 8(f) cannot as a matter of law apply to
nominal awards. (Section 8(f) limits an employer's compensation lia-
bility to two years of benefits when a preexisting disability substan-
tially aggravates a work-related injury.) The Benefits Review Board
(the Board) affirmed the partial disability award. The Board also said
that the award was not nominal, but nevertheless held that Newport
News was not entitled to § 8(f) relief because the award was so small
in fact. Because Stallings has suffered a loss in wage-earning capac-
ity, we affirm the benefits award. We also hold that a small award,
based on an actual loss of earning capacity, does not as a matter of
law preclude an employer from seeking relief under § 8(f). As a
result, we vacate the order denying § 8(f) relief and remand for the
agency to reconsider whether Newport News meets the requirements
of that section.

2

I.

A.

Stallings has worked as a welder for Newport News since 1987. Until June 1993 he worked mostly in enclosed areas, either aboard ships or in the shops. On June 24, 1993, while Stallings was on the job welding, he experienced fatigue, shortness of breath, and dizziness. He was promptly diagnosed with metal fume fever, a work-related injury caused by the inhalation of welding fumes. He was unable to return to work until September 28, 1993, and in the meantime he filed a claim for LHWCA benefits. Newport News agreed to a compensation award that required it to pay temporary total disability benefits to Stallings for the fourteen-week period of missed work.

When Stallings returned to work in September 1993, his doctor, Ellis F. Maxey, Jr., M.D. (a pulmonary specialist), advised him to avoid inside welding. After a while, however, Stallings was assigned to work inside in close proximity to several other welders. The inside welding caused Stallings to "feel[] somewhat rundown after work," and he reported this to Dr. Maxey during an office visit on September 23, 1994. The doctor again warned Stallings to avoid inside welding and confirmed that Stallings's medical restriction to outside work was permanent. Newport News accepted this restriction, and Stallings began welding only on outside jobs. Since Stallings has been restricted to outside work, he has missed an occasional day of work due to bad weather. On those days he was "passed out of work" (sent home early) and paid for four hours. On the bad weather days Stallings could not be reassigned to work inside, unlike welders without his medical restriction.

On eight days of bad weather between November 15, 1994, and February 2, 1996, Stallings was "passed out" because he could not work outside. This prompted Stallings to file another LHWCA claim for permanent partial disability benefits (1) for wages already lost from work missed because of his medical restriction and (2) for an ongoing loss of wage-earning capacity. Newport News opposed the claim, but requested § 8(f) relief in the event of an award. The Director of the Office of Workers' Compensation Programs of the U.S. Department of Labor (the Director), on behalf of the Special Fund,

3

gave notice that he had no objection to § 8(f) relief if there was employer liability. The ALJ awarded Stallings permanent partial disability benefits of $236.38 for past wages lost. In addition, because Stallings's work-related injury had permanently diminished his wage-earning capacity, the ALJ awarded him continuing benefits of $3.78 per week.

Newport News moved for reconsideration. The Director likewise moved for reconsideration and, in addition, withdrew his concession that Newport News was entitled to § 8(f) relief.[1] The Director argued that an employer is not entitled to § 8(f) relief when nominal benefits are awarded. On reconsideration the ALJ made no changes in the benefits award but agreed with the Director and held that Newport News was not entitled to § 8(f) relief because the award was nominal or de minimis. The Board affirmed the ALJ's award of benefits. The Board also concluded that the award could not be characterized as nominal because it was based on actual loss of wage-earning capacity. Nevertheless, the Board held that Newport News was still not entitled to § 8(f) relief because the award was "so small in fact." Newport News petitions for review.

B.

Before turning to the issues, we will briefly recite our standard for reviewing a Board decision. On factual issues we determine whether the Board "observed its statutorily-mandated standard for reviewing the ALJ's factual findings." Newport News Shipbuilding & Dry Dock

---

[1] The ALJ did not abuse his discretion when he allowed the Director to withdraw his consent to § 8(f) relief. See 20 C.F.R. § 702.338 ("[T]he procedures at the hearings generally . . . shall be in the discretion of the administrative law judge and of such nature as to afford the parties a reasonable opportunity for a fair hearing."). First, the Director was not aware that he had a potential legal argument based on the case of Todd Shipyards Corp. v. Director (Porras), 792 F.2d 1489 (9th Cir. 1986) (holding that § 8(f) relief is not available for a nominal award), until the ALJ set the disability award at the very low sum of $3.78 per week. Second, Newport News was not prejudiced by the retraction because the company had the opportunity to argue the § 8(f) issue to the ALJ on reconsideration.

4

Co. v. Director (Harcum II), 131 F.3d 1079, 1081 (4th Cir. 1997). According to the LHWCA, the ALJ's factual findings "shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). On legal issues "[t]he Board's adjudicatory interpretation of the LHWCA is entitled to no special deference, and is subject to our independent review. However, a reasonable interpretation of the LHWCA by the Director should be respected." Zapata Haynie Corp. v. Barnard, 933 F.2d 256, 258 (4th Cir. 1991) (citation omitted).

II.

Newport News first argues that Stallings is not entitled to disability benefits because he has not sustained any loss of wage-earning capacity. The record compels us to disagree.

An employee covered by the LHWCA is entitled to compensation for a disability resulting from a work-related injury sustained on the navigable waters of the United States, which include any adjoining pier, terminal, or other area used to load, unload, build, or repair ships. See 33 U.S.C. § 903(a). "Disability," as the Supreme Court has said, "is a measure of earning capacity lost as a result of work-related injury." Metro. Stevedore Co. v. Rambo (Rambo II), 521 U.S. 121, 127 (1997). Compensation is authorized not for the physical injury itself but for the economic harm arising out of the worker's diminished wage-earning capacity. See id.

Stallings's metal fume fever has left him with a permanent partial disability. His LHWCA compensation is equal to two-thirds of the decrease in his wage-earning capacity for as long as his disability continues. See § 908(c)(21). The LHWCA equates a partially disabled worker's wage-earning capacity with actual earnings post-injury only if the actual earnings "fairly and reasonably represent" wage-earning capacity. Id. § 908(h). Otherwise, a reasonable wage-earning capacity is set, "having due regard to the nature of [the worker's] injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future." Id.

5

The ALJ found that a welder without restrictions at Newport News can be reassigned from outside to inside work on days of bad weather. Stallings cannot work inside, however, because the medical restriction resulting from his disability limits him to outside work. This led to the ALJ's ultimate finding: Stallings has suffered a loss in wage-earning capacity because on days of bad weather Newport News has no work for him within his restriction. Newport News denies that Stallings lost any wage-earning capacity, and it makes several arguments in support of its position.

First, the company argues that there is no evidence in the record to support the ALJ's finding that Stallings's disability caused him to lose wages on days of bad weather. This finding is easily supported by substantial evidence when the record is considered as a whole. Stallings submitted an affidavit recounting the days when, "because it was raining, his employer did not offer him work within his restrictions due to his injury." In his affidavit and in his testimony before the ALJ, Stallings said that he was "passed out" on these days. In addition, the manager of human resources for Newport News testified that welders can be transferred between outside and inside work. Stallings, of course, could not be reassigned to inside work during foul weather.

Second, Newport News argues that "the possibility of being forced away from a full day's work applies equally to all welders." Pet'r Br. at 18. The company did not offer evidence to support this argument, and Stallings's evidence (recounted above) refutes it. In short, the record supports the ALJ's finding that Stallings, in contrast to welders who can work inside, loses wages on days when he is sent home because of bad weather.

Third, Newport News argues that because Stallings's actual wages have increased since his injury, he has not lost wage-earning capacity. This argument is without merit. Wage-earning capacity is determined by actual wages only "if such actual earnings fairly and reasonably represent [the worker's] wage-earning capacity." 33 U.S.C. § 908(h). See also Rambo II, 521 U.S. at 127; Randall v. Comfort Control, Inc., 725 F.2d 791, 794-95 (D.C. Cir. 1984). Here, Stallings's actual wages do not represent his wage-earning capacity because his actual wages have increased for a reason unrelated to wage-earning capacity: he has worked more overtime hours since his injury. It was therefore

6

proper for the ALJ to find that Stallings lost wages on specific days of bad weather when he could not work, even though his post-injury earnings are higher overall than before. The point is that if Stallings was free of his disability, he would be able to earn more than he does now. See Universal Mar. Serv. Corp. v. Wright, 155 F.3d 311, 329 (4th Cir. 1998).

Finally, Newport News argues that Stallings's disability is temporary, manifesting itself only in isolated situations. We reject this argument as well. Stallings's disability is permanent because his injury has permanently restricted him to working in outdoor areas. The ALJ's finding on this point is supported by substantial medical evidence, including an opinion from Stallings's doctor. Furthermore, "[u]nder the [LHWCA] any reduction in wage-earning capacity greater than zero is compensable." Randall, 725 F.2d at 798. Stallings has suffered a compensable injury even though his disability only causes him economic harm on those few days when the weather is too bad for outside work.

In conclusion, the record establishes that without his disability, Stallings would have the opportunity to work indoors on days of bad weather and to earn a full day's pay. As a result, the ALJ's finding that Stallings sustained a loss of wage-earning capacity is supported by substantial evidence. The award of benefits is therefore affirmed.

III.

Newport News's second argument is that the Board erred in denying the company § 8(f) relief. The company says that it is entitled to seek § 8(f) relief because it can show that Stallings's prior medical conditions substantially contributed to any present disability. If § 8(f) is applicable, Newport News will be responsible for only the first two years of Stallings's disability benefits, and the company will avoid liability for any increase (however substantial) in benefits in the future. The Director argues that because the disability award is nominal or very small, Newport News is barred from seeking § 8(f) relief. The arguments of Newport News and the Director with regard to § 8(f) raise several questions. Is Stallings's award of $3.78 per week for his permanent partial disability a nominal award? If it is, is § 8(f) relief available in the case of a nominal award? Finally, if Stallings's

7

award cannot be characterized as nominal because it reflects an actual loss of wage-earning capacity, is the company precluded from seeking § 8(f) relief because the amount of the award is so small? Before we answer these questions, we need to know more about § 8(f) and to understand what part of its language sparks the argument in this case.

A maritime employer is normally liable for all of the compensation payable to its employees under the LHWCA. See 33 U.S.C. § 904(a). Section 8(f) of the Act, however, limits the employer's liability in the following circumstance. When an injured employee has a permanent partial disability that is "found not to be due solely to [the work-related] injury" and the overall disability is "materially and substantially greater than that which would have resulted from the [work-related] injury alone," the employer is only required to pay compensation for the first 104 weeks. See id. § 908(f)(1). Thereafter, the benefits are paid out of a special fund administered by the Director and sustained by employer contributions. See id. §§ 908(f)(2)(A), 944. The chief purpose of § 8(f) is to encourage employers to hire and retain disabled workers. See Director v. Newport News Shipbuilding & Dry Dock Co. (Langley), 676 F.2d 110, 112 (4th Cir. 1982). Without § 8(f), employers would have a disincentive to hire disabled workers "for fear of having to pay for the entirety of their injuries if their pre-existing disabilities were to be aggravated at work." Director v. Newport News Shipbuilding & Dry Dock Co. (Carmines), 138 F.3d 134, 138 (4th Cir. 1998). See also Director v. Bath Iron Works Corp., 129 F.3d 45, 50 (1st Cir. 1997). Section 8(f) thus offers protection to employers who are willing to hire disabled workers. This protection comes in the form of a two-year limit on an employer's LHWCA liability when an employee's preexisting disability seriously compounds a work-related injury. See Newport News Shipbuilding & Dry Dock Co. v. Howard, 904 F.2d 206, 211 (4th Cir. 1990).

To obtain § 8(f) relief, the employer must prove three things: "1) that the [employee's] ultimate disability is not caused solely by the work-related injury, but is also caused in part by a pre-existing partial disability; 2) that the pre-existing disability was manifest to the employer prior to the work-related injury; and 3) that the ultimate permanent partial disability materially and substantially exceeded the disability that would have resulted from the work-related injury alone

8

[that is, without] the pre-existing condition." <u>Carmines</u>, 138 F.3d at 138-39 (footnote omitted). <u>See also</u> 33 U.S.C. § 908(f)(1).

Newport News proffered evidence that Stallings suffered from at least two preexisting medical conditions, chronic obstructive pulmonary disease (COPD) and hypertension. At this stage, Newport News and the Director are not arguing about whether the company can meet § 8(f)'s first and second requirements. Rather, they dispute whether Newport News can satisfy the third requirement of § 8(f), namely, whether Stallings's ultimate disability "materially and substantially" exceeds the disability that would have resulted from metal fume fever alone. Specifically, the Director argues that, as a matter of law, a cumulative disability measured by a monetary award that is either nominal or very small cannot be "materially and substantially greater than [the disability] which would have resulted from the [work-related] injury alone." § 908(f)(1).

A.

This brings us back to two of the questions mentioned. Did Stallings receive a nominal award? And, if he did, would that automatically bar § 8(f) relief? The Director urges us to apply the rule adopted in <u>Todd Shipyards Corp. v. Director (Porras)</u>, 792 F.2d 1489, 1492 (9th Cir. 1986), which held that when a nominal award is granted, § 8(f) relief is precluded because that section's third requirement is not met as a matter of law. Specifically, the <u>Porras</u> court decided that when a disability resulting from both a preexisting condition and a work-related injury is measured by a <u>nominal</u> award, the overall disability "cannot be `materially and substantially greater' than [the disability] caused by the last injury alone." <u>Id.</u> at 1491. Before we decide whether to apply the rule in <u>Porras</u>, we must answer the first question, that is, whether Stallings received a nominal award.

A nominal disability award is "a mechanism for taking future effects of disability into account when present wage-earning ability remains undiminished." <u>Rambo II</u>, 521 U.S. at 136. The concept of a nominal award is based on the Act's method for determining wage-earning capacity, which may take into account "the effect of disability as it may naturally extend into the future." 33 U.S.C. § 908(h). <u>See also Fleetwood v. Newport News Shipbuilding & Dry Dock Co.</u>, 776

9

F.2d 1225, 1234 n.9 (4th Cir. 1985). A nominal award does not represent an actual loss in wage-earning capacity. Instead, it is arbitrarily set at a very small sum, often at about one percent of present wage-earning capacity. See, e.g., Porras, 792 F.2d at 1490. The function of the nominal award is to allow the partially disabled employee to avoid statute of limitations problems pending a future (and expected) decline in wage-earning capacity. An injured maritime worker must generally bring his disability claim within one year of injury. See § 913(a). A losing claimant may file a request to modify a decision rejecting his claim within one year of any rejection. See id. § 922; Betty B Coal Co. v. Director, OWCP, 194 F.3d 491, 497-500 (4th Cir. 1999). A winning claimant may file for a modification of his benefits "at any time prior to one year after the date of the last payment of compensation." 33 U.S.C. § 922. If a partially disabled claimant with no present loss of earning capacity was denied benefits outright, he would have to file a modification request every year in order to keep his case alive until his earning power declined. See Rambo II, 521 U.S. at 134 n.6. The potential pitfalls for this claimant are avoided by use of the nominal award, which provides the claimant with ongoing compensation payments. This positions him to take advantage of the rule allowing for a modification request at any time up to one year after the last payment of benefits. A nominal award therefore serves as a placeholder to keep the partially disabled employee's compensation case alive for purposes of modification if he experiences an actual loss in earning power at some point in the future. See Rambo II, 521 U.S. at 128-29; Hole v. Miami Shipyards Corp., 640 F.2d 769, 771 (5th Cir. 1981).

We have outlined the nature and purpose of a nominal award. We will also look at the particular circumstances of the partially disabled claimants in Porras and Rambo II for guidance in deciding whether Stallings actually received a nominal award. In Porras the employee had no immediate loss in wage-earning capacity due to his permanent partial disability because he had a five-year contract for light work at full salary. As a result, the ALJ granted him a nominal award of $3.00 per week so that he could "seek modification of the award when the economic effects of the injury became apparent." Porras, 792 F.2d at 1490-91. Similarly, in Rambo II the employee's back injury did not affect his wage-earning capacity once he was promoted to crane operator, even though his physical condition had not changed. Because the

10

employee's "capacity to earn wages [was] no longer depressed" due to his crane operator wages, the Supreme Court noted that he could be eligible only for nominal compensation. Rambo II, 521 U.S. at 140. The facts of Porras and Rambo II confirm that a partially disabled worker may be awarded nominal benefits only when he has no present loss of wage-earning capacity.

It is clear that Stallings did not receive nominal compensation. His award of $3.78 per week, while a very small sum, represents his actual (or current) loss in wage-earning capacity. The ALJ arrived at this figure by using the wage loss that Stallings incurred during a 62 1/2-week period in 1994-1996 as representative of the wage loss he could expect to suffer over time. The Director argues that this award is still a nominal one because it "demonstrate[s] a potential for future [additional] loss of income." Director's Br. at 23. We disagree. An award is not nominal simply because it has the potential to be increased. Instead, it is nominal because present wage-earning ability is undiminished, but there is a significant potential that the disabling injury will result in a reduced capacity to earn wages sometime in the future. See Rambo II, 521 U.S. at 138.

The Director also argues that Stallings received a nominal award because the ALJ characterized it as such on reconsideration. The ALJ's characterization, however, cannot camouflage the facts. We agree with the Board that "[d]espite the administrative law judge's representation of this award as a nominal award pursuant to Rambo II, his findings of fact belie this characterization." Because Stallings's disability award represents his actual loss in wage-earning capacity, we hold that it is not a nominal award. Accordingly, the Porras rule -- that § 8(f) relief is precluded in the case of a nominal award -- is not applicable to this case.[2]

B.

Now that we have said that Stallings's compensation award is not a nominal one, we consider the Director's alternative argument. According to the Director, the award of $3.78 per week is so "utterly

_____

[2] Because Stallings did not receive a nominal award, we do not reach the question presented in Porras.

11

insubstantial," Director's Br. at 29, that for § 8(f) purposes it should be treated the same as the nominal award in <u>Porras</u>. Specifically, the Director argues that such a paltry sum, even though calculated on an actual loss, cannot represent a disability that is "materially and substantially greater" than the disability that would have resulted from metal fume fever alone. We decline to hold that an employer is not eligible for § 8(f) relief when the disability award is small in dollar amount or represents only a small percentage of the employee's total wages. The Director's interpretation of § 8(f) is contrary to the section's language and to the way in which courts have consistently interpreted the section's requirements.

Section 8(f) provides that an employer must pay only the first 104 weeks of permanent partial disability benefits if the employee's "disability is materially and substantially greater than that which would have resulted from the subsequent injury alone." 33 U.S.C. § 908(f)(1). This statutory language requires that the employee's actual disability be materially and substantially greater than the disability the employee would have faced in the absence of his preexisting medical condition. The statute thus focuses on the degree of <u>disability</u> attributable to the work-related injury, not on the dollar amount of the disability <u>award</u>. Under the Director's interpretation of the statute, however, the decision whether to award § 8(f) relief would depend on the level of compensation. While we normally defer to the Director's reasonable interpretation of the LHWCA, <u>see Zapata Haynie Corp. v. Barnard</u>, 933 F.2d 256, 258 (4th Cir. 1991), we cannot defer when his interpretation is inconsistent with the language of the Act. <u>See Public Employees Ret. Sys. v. Betts</u>, 492 U.S. 158, 171 (1989). In this instance, the Director has lost sight of the plain language of § 8(f).

Moreover, the case law confirms that the relevant inquiry under the third element of § 8(f) centers on the disability and a determination of how much of it was caused by the work-related injury and how much of it was caused by the preexisting condition. Specifically,

> the employer must show by medical evidence or otherwise that the ultimate permanent partial disability materially and substantially exceeds the disability as it would have resulted from the work-related injury alone. A showing of this kind

12

requires quantification of the level of impairment that would ensue from the work-related injury alone. In other words, an employer must present evidence of the type and extent of disability that the claimant would suffer if not previously disabled when injured by the same work-related injury. Once the employer establishes the level of disability in the absence of a pre-existing permanent partial disability, an adjudicative body will have a basis on which to determine whether the ultimate permanent partial disability is materially and substantially greater.

Director v. Newport News Shipbuilding & Dry Dock Co. (Harcum I), 8 F.3d 175, 185-86 (4th Cir. 1993). See also Director v. Bath Iron Works Corp., 129 F.3d 45, 51 (1st Cir. 1997) ("[A]n employer is required to show the degree of disability attributable to the work-related injury, so that this amount may be compared to the total percentage of the partial disability for which coverage under the LHWCA is sought.").

In this case Newport News's eligibility for § 8(f) relief therefore depends on comparing the degree of disability that would have resulted solely from Stallings's work-related injury (metal fume fever) with the degree of disability that Stallings currently suffers as a result of the combination of the metal fume fever and his preexisting medical conditions of COPD and hypertension. The ALJ has not made such a comparison in this case. After the Director withdrew his concession on § 8(f) relief, the ALJ denied the relief as a matter of law. Thereafter, the Board accepted the Director's argument that even if Stallings's award is not a nominal one, it is too "small in fact" to allow § 8(f) relief. Specifically, the Board held that because the award is so small, the "employer would be legally unable to establish that claimant's disability is not due solely to the work injury, and is, in fact, `materially and substantially greater' than that caused by the last injury alone." We disagree with the Director and the Board. We recognize, of course, that an award of $3.78 per week is insubstantial and that Stallings's disability does not greatly affect his wage-earning capacity. Nevertheless, the small size of the award does not answer the statutory question of whether Stallings's current disability -- manifested by his inability to work indoors -- is "materially and substantially" greater than the kind of disability he would be facing if he

13

had only metal fume fever and did not suffer from COPD and hypertension. And, it is legally (and factually) possible to answer this question in Stallings's case because, as we have said, § 8(f) focuses not on the dollar amount of the award but on how much each condition contributes to the ultimate physical disability.

The Director also invokes the policy argument used to support the denial of § 8(f) relief in the case of a nominal award. The argument is that if § 8(f) applied to a nominal award, the employer would escape liability for any significant compensation; it would pay the nominal benefits for two years and avoid liability for any substantial decline in wage-earning capacity that might occur later. See Porras, 792 F.2d at 1491-92. Notwithstanding the merits of the policy argument in the case of a nominal award, we decline to apply it in a case like this one. Here, the employer has been ordered to pay compensation, calculated on the basis of an actual loss in wage-earning capacity, to an employee with a permanent partial disability. In such a case the employer is entitled to § 8(f) relief if it can show that a preexisting condition is a material and substantial contributor to the overall disability resulting after the work-related injury.

The policy argument is inapplicable for another reason. When the disability award represents an actual loss in wage-earning capacity, there is not necessarily an expectation that wage-earning capacity will decline in the future. A nominal award, on the other hand, must be based on the "significant potential" that the worker's injury will diminish his wage-earning capacity at some future point. Rambo II, 521 U.S. at 138. In Stallings's case there is no finding that he faces a significant potential for a further decline in wage-earning capacity. Thus, there is no indication that Newport News will be avoiding significant compensation payments if it is awarded § 8(f) relief.

We hold that a small disability award that reflects an actual loss in wage-earning capacity does not preclude an employer from seeking relief under § 8(f) of the LHWCA. We therefore vacate the Board's decision insofar as it denies § 8(f) relief to Newport News. We remand the case to the Board with instructions to remand to the ALJ for reconsideration of the § 8(f) issue. In particular, the ALJ should determine whether Stallings's ultimate disability (taking into account his pre-injury COPD and hypertension) is materially and substantially

14

greater than the disability that would have resulted from metal fume fever alone.

IV.

To summarize, we affirm the award of disability benefits to Stallings. We also hold that an employer may seek § 8(f) relief on a disability award that is small but not nominal. We therefore vacate the Board's decision denying Newport News § 8(f) relief and remand to the Board with instructions to remand to the ALJ, who will reconsider the company's request for § 8(f) relief in light of this opinion.

AFFIRMED IN PART, VACATED
IN PART, AND REMANDED

15